IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO.: WDQ-10-0488 |
| TIMOTHY WILSON | |

MEMORANDUM OPINION

On December 5, 2011, Timothy Wilson was convicted of conspiracy to distribute, and possession with intent to distribute, crack cocaine. For the following reasons, his motion for a new trial will be denied.

I. Background

On August 11, 2010, Wilson and Luis Ahorrio, Jr. were indicted for conspiracy to distribute, and possession with intent to distribute, crack cocaine, in violation of 21 U.S.C. §§ 841 and 846. ECF No. 15. On December 3, 2010, Wilson moved for severance. ECF No. 29. On November 18, 2011, the Court denied the motion to sever because Wilson had not explained how a joint trial would compromise a specific trial right or create such prejudice that both defendants would be found guilty. ECF No. 95 at 23; ECF No. 96.

Trial began on November 28, 2011. ECF No. 109. The Government called seven witnesses and showed video of a traffic

stop involving Wilson and Ahorrio. This evidence established the following:

On July 23, 2010, Wilson rented a red Toyota Corolla in Toms River, New Jersey. Later that day, Ahorrio drove from New York to Wilson's Toms River home. The two then headed south in the rental car, with Ahorrio driving.

At about 7:26 p.m., Maryland State Police Corporal Howard Kennard stopped the car on Route 113 in Worcester County, Maryland, for speeding and following another car too closely. Kennard noticed Ahorrio's hands shaking as he asked for Ahorrio's driver's license and registration. The officer also noticed that Wilson's breathing was shallow and rapid. Kennard saw that the car rental agreement authorized only Wilson to drive the car.

The officer asked Ahorrio to leave the car. Ahorrio told him that he lived in Queens, New York, Wilson had rented the car, Ahorrio had driven a different car from New York to Toms River to meet Wilson, and the two of them were driving to drag races. Kennard approached Wilson, who remained in the passenger seat, and told him to add Ahorrio to the rental agreement as an additional driver. Wilson said that the two were heading to drag races in North Carolina. While talking to Kennard, Wilson displayed a miniature probation officer's badge in his open wallet and said that he had "a brother on the job." Meanwhile,

K-9 Trooper Dana Orndorff had arrived and begun speaking to Ahorrio, who told him that he and Wilson were driving to drag races in Georgia.

At about 7:33 p.m., Kennard confirmed that Ahorrio's license was valid and told him that he would issue a warning for the traffic violations. He also said that police were conducting canine sniffs of cars stopped for traffic violations. Ahorrio said only one bag in the car belonged to him, and Wilson would have to consent to the canine scan. Orndorff had Wilson exit the car, and Wilson urged him to hurry the scan because he had to use the restroom.

At 7:37 p.m., Orndorff walked the canine around the car, and the dog alerted near the driver's door. When Kennard told Wilson and Ahorrio that the dog had alerted, Wilson said that he did not know why and repeated that he had to use the restroom.

At 7:39 p.m., Kennard began searching the trunk of the car and found a discharged shotgun shell in a bag that Wilson said he had borrowed. Kennard then searched the cabin of the car and found a brown paper bag under the passenger seat. Inside the brown bag, the officer found a July 16, 2010 receipt from a Burger King blocks away from Ahorrio's home, and a white plastic bag containing clear plastic baggies with 327.9 grams of crack cocaine. At 7:49 p.m., Wilson and Ahorrio were arrested.

Ahorrio waived his *Miranda* rights and told police that he was working in Manhattan on July 23, 2010, when Wilson told him he was renting a car to travel to drag races. Ahorrio said that he and Wilson had been traveling to North Carolina, and Wilson was going to cover Ahorrio's expenses. Ahorrio said that they had planned to catch the Cape May to Lewes ferry but had missed the last departure, so Wilson had directed Ahorrio down Route 113.

On November 29, 2011, the Government called Immigration and Customs Enforcement Special Agent Mark Joyner to testify. During cross examination, Ahorrio's attorney, Michael Montemarano, Esquire, asked whether Joyner knew that Wilson's brother, Daniel Wilson, had been charged with drug distribution a month before Wilson's arrest. Wilson's counsel objected and moved for a mistrial. The Court denied the motion and advised the jury not to consider anything that Montemarano had said about Wilson's brother. The Court also advised Montemarano to warn Wilson's counsel if he intended to ask similar questions, so that Wilson's counsel could renew his motion for mistrial.

At the conclusion of the Government's case-in-chief, the Court ordered Montemarano not to question any witness about Daniel Wilson. During his direct examination of Ahorrio and cross-examination of Wilson, Montemarano asked about Wilson's siblings, including Daniel Wilson.

In its final instructions to the jurors, the Court advised that they could not find either defendant guilty merely because they may have associated with other people who were guilty of wrongdoing. The jury found Wilson and Ahorrio guilty on all counts.

On December 19, 2011, Wilson moved for a new trial. ECF No. 129. On January 3, 2012, the Government opposed that motion. ECF No. 131.

II. Analysis

A. Standard of Review

Fed. R. Crim. P. 33 allows the Court to grant a new trial "in the interest of justice" when the defendant presents newly discovered evidence or "other grounds" for vacating the judgment. *See United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985); Fed. R. Crim. P. 33(b). When raising "other grounds," the defendant must show an "error of sufficient magnitude to require reversal on appeal."[1] A "harmless" error is not a basis for a new trial.[2] An error is harmless if "[it is] clear beyond a reasonable doubt that a rational jury would have

---

[1] *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (*quoting* Charles A Wright et al., Federal Practice & Procedure § 556 (3d ed. 2004)).

[2] *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

found the defendant guilty absent the error." *Neder v. United States*, 527 U.S. 1, 18 (1999).

B. Wilson's Motion

Wilson argues that (1) he was "severely prejudiced" by the Court's denial of his motion for mistrial, and (2) the "curative instruction failed to counteract the prejudice" that resulted from Montemarano's questions about his brother. ECF No. 129 at 5. He contends that these "improper questions deprived [him] of the presumption of innocence and instead invited the jury to convict him based on inadmissible, irrelevant insinuations of bad character and bad associations." *Id.* at 7.

The Government counters that any prejudice was minor because the jury heard only a question; it addressed the criminal past of Daniel Wilson, not Timothy Wilson; the witness did not respond; no evidence was introduced about Daniel Wilson's conviction; the Court instructed the jury to disregard any reference to Daniel Wilson's conviction; and the evidence against Wilson was "strong." ECF No. 131 at 5-7.

A mistrial should be granted only when "less drastic alternatives" -- such as curative instructions -- cannot protect the defendant's right to a fair trial.[3] In measuring the prejudice from an alleged error, the Fourth Circuit considers

---

[3] *See United States v. Martin*, 756 F.2d 323, 328 (4th Cir. 1985); *Harris v. Young*, 607 F.2d 1081, 1085 (4th Cir. 1979).

6

"the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error."[4] Thus, "where a passing and brief remark was made referencing a prior criminal record, but then a curative instruction was issued, the Fourth Circuit has held that no prejudice exists . . . if the jury could make [an] individual guilt determination by following the [C]ourt's cautionary instructions."[5] A new trial is warranted only if "there is a reasonable possibility that the jury's verdict was influenced by the improper material." *See United States v. Seeright*, 978 F.2d 842, 849 (4th Cir. 1992) (internal quotation marks omitted).

Wilson is not entitled to a new trial. Any prejudice from Montemarano's questions was slight. After Montemarano asked Agent Joyner about Daniel Wilson's criminal record, the Court did not permit the witness to respond and cautioned the jury not to consider any statements about Wilson's brother. Montemarano's subsequent questions of Ahorrio and Wilson concerned only whether the defendants knew Daniel Wilson. The Court's final instructions advised that neither defendant could

---

[4] *See United States v. Nyman*, 649 F.2d 208, 212 (4th Cir. 1980) (internal citation and quotation marks omitted).

[5] *United States v. Hayden*, 85 F.3d 153, 158 (4th Cir 1996 (internal quotation marks omitted) (affirming refusal to grant mistrial when Government witness mentioned that defendant had previously been imprisoned, because "the remark was brief, not repeated, and the trial court immediately sustained an objection and advised the jury to discount the testimony").

be convicted for associating with guilty people. Moreover, the evidence against Wilson was strong. The drugs were found under Wilson's seat, in a car he had rented that morning. His breathing was shallow and rapid during the traffic stop, he tried to curry favor with Kennard by showing the probation officer badge, and he repeatedly urged the police to hurry the dog sniff and search of the car. In light of the substantial evidence against him, the Court's curative instruction, and the final instruction against guilt by association, there is no "reasonable possibility that the jury's verdict was influenced by" Montermarano's references to Daniel Wilson. *See Seeright*, 978 F.2d at 849 (internal quotation marks omitted). Accordingly, the Court will deny Wilson's motion for a new trial.

III. Conclusion

For the foregoing reasons, the Court will deny Wilson's motion for a new trial.

2/27/12
Date

William D. Quarles, Jr.
United States District Judge